COURT OF APPEALS
DECISION
DATED AND FILED

March 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP528**
**2023AP768**
**STATE OF WISCONSIN**

Cir. Ct. No. 2021FA731

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

KHIDER A.K. ELNIMEIRY,

    PETITIONER-APPELLANT,

V.

AMAL BENSHILI,

    RESPONDENT-RESPONDENT.

APPEAL from a judgment and an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In this post-divorce judgment action, Khider Elnimeiry appeals a circuit court judgment determining child support and an order denying his motion to modify child support and granting his motion for relief from judgment by reducing his child support obligation for 90 days to give him time to obtain new employment.[1] Elnimeiry identifies two issues on appeal: (1) the court erred in determining child support by imputing income to him based on his earning capacity as a physician who can work half-time rather than by relying on his actual earnings and fully accounting for his work limitations; and (2) the court erred in not reducing his child support obligation for a longer time to enable him to obtain new employment. As to the first issue, we conclude that Elnimeiry fails to show that the court erred. We do not address the second issue because Elnimeiry does not develop an argument as to that issue. *See **Post v. Schwall***, 157 Wis. 2d 652, 657, 460 N.W.2d 794 (Ct. App. 1990) ("Arguments raised but not briefed or argued are deemed abandoned by this court."). Accordingly, we affirm.

¶2 Before discussing the merits of Elnimeiry's appeal, we address whether this court can decide the appeal without a brief from Amal Benshili. Benshili did not file a respondent's brief as required by the rules of appellate procedure and the delinquency notice previously issued by the clerk of this court. WISCONSIN STAT. § 809.83(2) (2021-22) provides: "Failure of a person to comply with a court order or with a requirement of these rules ... does not affect the

[1] Elnimeiry's appellate brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which states that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover." This rule was amended in 2021, *see* S. CT. ORDER 20-07 (eff. July 1, 2021), because briefs are now electronically filed in PDF format and are electronically stamped with page numbers when they are accepted for e-filing. As our supreme court explained in amending the rule, the pagination requirement ensures that the number on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07.

jurisdiction of the court over the appeal but is grounds for ... summary reversal ... or other action as the court considers appropriate."[2]  When the respondent fails to file a brief, this court has the authority to summarily reverse the judgment or order on appeal.  *See State ex. rel. Blackdeer v. Township of Levis*, 176 Wis. 2d 252, 259-60, 500 N.W.2d 339 (Ct. App. 1993) (summary reversal is an appropriate sanction for a respondent's violation of briefing requirements).  Whether to grant summary reversal as a sanction against a party who fails to file a brief is a decision left to this court's discretion.  *See Raz v. Brown*, 2003 WI 29, ¶14, 260 Wis. 2d 614, 660 N.W.2d 647 ("A decision by the court of appeals to grant summary reversal as a sanction against a party who fails to file a brief by the date due involves an exercise of discretion.").  We have determined that this appeal does not warrant summary reversal.  We therefore decide the appeal based solely on review of appellant Elnimeiry's brief and the record.

## BACKGROUND

¶3     We present the following facts in detail because they provide necessary context for our analysis that follows.

¶4     Elnimeiry and Benshili were married in 2015 and are the parents of two minor children.  In May 2021, Elnimeiry filed a petition for divorce.

¶5     Elnimeiry and Benshili entered into a Partial Marital Settlement Agreement providing for joint legal custody and shared placement, which the

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

circuit court incorporated by order. On January 17, 2023, the court held a trial to address child support.[3]

¶6 Near the start of the trial, the parties agreed that Benshili's gross monthly income, for purposes of child support, is $2,616. The parties also agreed, and the circuit court confirmed, that the issue for trial was the determination of Elnimeiry's gross monthly income. During the trial, the court heard testimony pertinent to that issue from, among other witnesses, Elnimeiry, Elnimeiry's and Benshili's vocational experts, and a psychologist who saw Elnimeiry as a patient in 2017.

¶7 Elnimeiry testified as follows. He is a physician who received his license to practice medicine in Wisconsin in 2020. He began working as a physician in Wisconsin at the Edgerton Hospital primary care clinic in June 2020. He got behind on paperwork, lost his clinic privileges, and was terminated in October 2020.

¶8 Elnimeiry was most recently working in telemedicine and providing medical care to correctional inmates for a total of 20 hours per week. He began working in telemedicine in September 2021. He could conduct at most four to five telemedicine consults in a day, but the number of consults fluctuated widely from week to week. He was paid $26 per consult. He earned $2,967 in 2022 from his telemedicine work.

---

[3] The parties also addressed property division at trial. Because this appeal concerns only child support, we relate only the evidence pertinent to child support.

¶9    Elnimeiry also worked for a vendor providing medical care at the Racine County jail throughout 2022 until the vendor declared bankruptcy.  He visited the jail for this work one day each week.  He earned $60,414 in 2022 from his correctional medicine work.  He enjoyed working at a correctional facility and was looking for a new position at another correctional facility.

¶10    In 2022, Elnimeiry also volunteered for about five hours per week at a free family clinic.

¶11    Elnimeiry's financial disclosure statement for 2022 reflected that his gross monthly income was $4,604 (for a total of approximately $55,200 for the year).  In 2020, his gross annual income as reported on his tax forms was $226,712.

¶12    Elnimeiry was diagnosed in 2017 with attention-deficit/hyperactivity disorder (ADHD) and anxiety, which limit his ability to work in a fast-paced environment for long hours, but those diagnoses do not limit his ability to work in correctional medicine.  Also, correctional medicine and telemedicine require relatively less paperwork.

¶13    The psychologist testified that he diagnosed Elnimeiry in 2017 as having ADHD and anxiety, and that typically a person with ADHD is able to work 40 hours per week as a physician, with the benefits of medication and therapy.

¶14    Benshili's vocational expert testified as follows.  If Elnimeiry were fully capable of full-time work as a physician, his earning capacity in the Madison area would be between $300,000 and $330,000 per year.  When he worked at the Racine County jail, he was paid $145 per hour for his actual work time plus a monthly consulting fee of $3,600.  Elnimeiry told the expert that Elnimeiry would

be willing to work up to 20 hours per week in correctional medicine and was trying to get a contract for 20 hours per week in Madison. Based on what Elnimeiry was paid in his Racine County jail job, if he worked 20 hours per week at a similar job, he would earn approximately $194,000 to $195,000 a year. If he did some telemedicine in addition, he would earn over $200,000. Elnimeiry agreed that the expert's "math is correct" as to the correctional medicine job "if a job was available."

¶15 Elnimeiry's vocational expert testified as follows. Given Elnimeiry's diagnosed limitations, his spotty academic and employment records, and his loss of clinic privileges, he is able to work only in jobs such as telemedicine and correctional medicine and, working 20 hours per week, earn between $60,000 and $70,000 per year. Considering those same factors, Elnimeiry could earn between $130,000 and $140,000 working full time. Ignoring those factors, he could earn approximately $260,000 annually. Given the employment market in Dane County, it was possible that Elnimeiry could find a 20 hours per week job at $145 per hour (the hourly rate he was paid at his correctional medicine job the prior year).

¶16 In an oral ruling the circuit court said that the calculation of child support depended on the court's "finding a reasonable imputation of income to" Elnimeiry based on his earning capacity. The court noted that both parties called vocational expert witnesses and that Benshili contended that Elnimeiry should be earning more than he earned in 2022.

¶17 The circuit court found, based on the psychologist's testimony, which the court credited, that Elnimeiry has ADHD and anxiety but can work 20 or more hours per week, up to full time, with medication and therapy. The court

rejected as unreasonable Elnimeiry's vocational expert's opinion that Elnimeiry could earn only $50,000 to $70,000 a year. The court also rejected as unreasonable an opinion that Elnimeiry could, with his limitations, earn as much as $350,000. The court did credit Elnimeiry's vocational expert's testimony that he is capable of earning somewhere in between those two extremes, specifically between $130,000 and $140,000, taking into consideration his "disability and his difficulties and his condition." The court found that Elnimeiry has the capacity to earn $130,000. The court set child support consistent with its finding that Elnimeiry's earning capacity is $130,000, with the first child support payment of $1,261 to Benshili due the following month.

¶18    After the trial, the circuit court issued a judgment consistent with its oral ruling, which included the following findings of fact and determinations: (1) Elnimeiry "has a physical and mental condition that affects his employability"; (2) Elnimeiry "can work full time"; (3) Elnimeiry's earning capacity is $130,000 annually; (4) Elnimeiry shall pay monthly child support in the amount of $1,261.

¶19    Elnimeiry did not pay the first installment of child support, which had been due on February 1, 2023. On February 27, 2023, Benshili moved the court to hold Elnimeiry in contempt for failure to pay child support. On March 13, 2023, less than two months after the trial, Elnimeiry filed a "Motion for Relief, Stay Order, Reopen Judgment," and a motion to modify child support. A circuit court commissioner heard the parties' motions at a hearing on March 31, 2023, and issued an order on April 6, 2023, granting Benshili's motion for contempt and denying Elnimeiry's motion to modify child support.

¶20    Elnimeiry timely moved for a de novo hearing, which the circuit court held on April 20, 2023. At the start of the hearing, Elnimeiry's counsel told

the court that Elnimeiry was not challenging the court's decision to impute income to him based on his earning capacity, but was raising two issues on that topic: (1) there is new evidence showing that the imputed income based on earning capacity is too high; and (2) if the imputed income based on earning capacity is not changed, then the court should reduce Elnimeiry's child support obligation for a reasonable amount of time, such as six months, to give him time to obtain employment.

¶21 At the hearing, Elnimeiry called as a witness a family medicine physician who has seen Elnimeiry as a patient since 2022 and who had not testified at the trial. The physician testified that he agreed with the prior diagnoses of what he referred to as attention deficit disorder (ADD) and anxiety and that Elnimeiry is compliant with his medication prescribed for the ADD. The physician further testified that it is his professional opinion that Elnimeiry can work 20 hours per week. The physician based his opinion on the 2017 diagnoses, Elnimeiry's prior inability to handle full-time work as a family medicine physician, and his compliance with his medication. Elnimeiry testified that he had applied to over 30 jobs since the divorce judgment and received no offers. Benshili testified that Elnimeiry is lying about his work difficulties, he is a hard worker and has had work difficulties only after filing the divorce petition, he will do "anything and everything" to not pay child support, and he wants her to struggle.

¶22 In an alternative argument, Elnimeiry's attorney asked that the monthly child support be reduced for six months to give Elnimeiry time to find a job. Benshili's attorney asked that, if the circuit court decided to order reduced child support payments, the court do so for only 60 days.

¶23    In an oral ruling, the circuit court vacated the contempt finding based on the parties' stipulation that the outstanding payments had been made. The court denied Elnimeiry's motions to modify child support, to stay, and to reopen, finding that most of the evidence presented at the hearing was "a rehash" of what had been presented at trial. The court specifically determined that Elnimeiry presented no new evidence to counter the trial testimony by his vocational expert that he has the capacity to earn $130,000. The court further noted that, while the testimony at trial supported imputing income based on an earning capacity of two or three times $130,000, the court continued to find that the lower amount is the best assessment of what Elnimeiry could earn.

¶24    The circuit court found that Elnimeiry's testimony about his efforts to find work and the testimony of the physician he called presented new evidence in support of his motion for relief from judgment or order under WIS. STAT. § 806.07(1)(g), and that this physician's testimony was credible, if "a little redundant."[4]    The court determined that the new evidence warranted a revised finding that Elnimeiry could work 20 hours per week rather than full time, and a new provision reducing by half the monthly child support amount owed by Elnimeiry for 90 days, to give Elnimeiry 90 days to find employment.

¶25    The circuit court subsequently entered an order consistent with its oral ruling. The court granted Elnimeiry's motion for relief from judgment or order under WIS. STAT. § 806.07(1)(g), found that Elnimeiry could work 20 hours per week, and reduced the monthly child support payment to $630 for May, June,

---

[4] Under WIS. STAT. § 806.07(1)(g), "the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons: … (g) It is no longer equitable that the judgment should have prospective application."

and July to give him time to find a half-time job. The court ordered that, commencing August 1, Elnimeiry shall pay child support as originally ordered in the amount of $1,261.

¶26 Elnimeiry appealed both the judgment of divorce and the post-judgment order, and we granted his motion to consolidate the appeals.

## DISCUSSION

¶27 We understand Elnimeiry to be arguing that the circuit court erred when the court: (1) initially determined child support by imputing income to him based on his earning capacity as a physician who can work half-time rather than by relying on his actual earnings and accounting for his work limitations; and (2) denied his motion to modify child support based on an erroneous determination of his earning capacity that ignored his work limitations.

¶28 A court may consider a parent's earning capacity both in determining child support and in determining whether the parent has shown a substantial change in circumstances sufficient to justify revision of a child support order. WIS. STAT. § 767.511(1g) (in determining child support, a court may consider "information relevant to the parent's earning capacity"); WIS. STAT. § 767.59(1f)(c)3. (a change in the parent's earning capacity "may constitute a substantial change of circumstances"). The parent seeking to modify child support has the burden of showing that there has been a substantial change of circumstances. *Rottscheit v. Dumler*, 2003 WI 62, ¶11, 262 Wis. 2d 292, 664 N.W.2d 525.

¶29 A circuit court has discretion both to determine child support and to modify a parent's child support obligation after finding that a substantial change in

circumstances has occurred. *Sellers v. Sellers*, 201 Wis. 2d 578, 585, 549 N.W.2d 481 (Ct. App. 1996) (determining child support); *Winkler v. Winkler*, 2005 WI App 100, ¶23, 282 Wis. 2d 746, 699 N.W.2d 652 (determining whether to modify child support). We will affirm the court's discretionary decision as long as it applied the correct legal standard to the evidence before it and reached a reasonable conclusion. *Rottscheit*, 262 Wis. 2d 292, ¶11. We accept the court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2).

¶30    Elnimeiry makes several arguments in support of his challenge to the circuit court's determining his child support obligation based on his earning capacity rather than his actual earnings and the court's denying his motion to modify child support. We now explain why we reject his arguments.

¶31    Elnimeiry appears to argue that the circuit court erred as a matter of law in imputing income to him based on his earning capacity, as opposed to his actual earnings, because there is no evidence showing that he unreasonably sought lower paying, half-time positions "to defeat his child support obligations." *See Chen v. Warner*, 2005 WI 55, ¶20, 280 Wis. 2d 344, 695 N.W.2d 758 (In determining child support, a circuit court may consider a parent's earning capacity if it finds that the parent's "decision to reduce or forgo income is voluntary and unreasonable under the circumstances.").

¶32    However, as related above, Elnimeiry did not make this argument before the circuit court. At trial he did not object when the court twice indicated that the determination of child support depends on the income that could be imputed to him based on his earning capacity rather than his actual earnings. At the post-judgment hearing he affirmatively told the court that he was not challenging the court's decision to impute income based on earning capacity, but

was arguing only that the imputed income found by the court is too high. "A fundamental appellate precept is that we 'will not … blindside trial courts with reversals based on theories which did not originate in their forum.'" *Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476 (quoting *State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995)). Thus, we generally do not consider arguments raised for the first time on appeal. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court."); *Townsend v. Massey*, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155 ("[T]he forfeiture rule focuses on whether particular arguments have been preserved, not on whether general issues were raised before the circuit court."). We conclude that Elnimeiry has forfeited his right to raise this argument on appeal and fails to provide a reason that we should entertain the argument despite his failure to preserve it in the circuit court.

¶33 Elnimeiry also argues that there was no evidence to support the circuit court's finding that his earning capacity is $130,000, either at the trial or at the post-judgment hearing. However, as related above, at the trial the court based this finding on Elnimeiry's own vocational expert's testimony that in Dane County it is possible that Elnimeiry could find a half-time job paying $145 per hour (approximately $150,000 per year). The court expressly rejected that expert's alternative determination that Elnimeiry's earning capacity was between $50,000 and $70,000 as unreasonable. At the post-judgment hearing, the court further explained that, while the testimony at trial supported imputing income based on an earning capacity of two or three times $130,000, the court found that that lower amount most reasonably reflects Elnimeiry's earning capacity given his specific limitations.

¶34    Elnimeiry further argues that imputing income based on an earning capacity of $130,000 ignores the fact that he can work only 20 hours per week. However, as Elnimeiry also acknowledges, the circuit court changed its original finding that Elnimeiry could work full time in response to his motion for relief from judgment or order under WIS. STAT. § 806.07(1)(g).  The court found that Elnimeiry could in fact work only 20 hours per week, based on new testimony by Elnimeiry's current treating physician.    However, the court also denied Elnimeiry's motion to modify child support because Elnimeiry had presented no new evidence as to his earning capacity when he works 20 hours per week.  In other words, the court found that Elnimeiry had not presented evidence of any change in circumstances relevant to his earning capacity.  On appeal, Elnimeiry does not identify any such *new* evidence to support an argument that the court erred in doing so.  *See Rottscheit*, 262 Wis. 2d 292, ¶11 ("The burden of showing that there has been a change in circumstances sufficient to justify a modification falls to the party seeking modification."); *Benn v. Benn*, 230 Wis. 2d 301, 307, 602 N.W.2d 65 (Ct. App. 1999) (We will not overturn a circuit court's findings of fact regarding what changes in circumstances have occurred unless the findings are clearly erroneous.).

¶35    Elnimeiry argues that the circuit court's finding that his earning capacity is $130,000 ignores that he had applied to over 30 jobs without receiving any offers.  However, the court did consider this evidence to support granting Elnimeiry's motion for relief from judgment or order and reducing his child support obligation by half for 90 days to give him time to find half-time employment.

¶36    The record establishes that the circuit court's initial finding of Elnimeiry's earning capacity was reasonably based on the evidence that the court

13

credited for reasons that the court explained. The record establishes that the court's decision not to change that finding, along with its decisions to find that Elnimeiry could work only 20 hours per week and to reduce his child support obligation by half for 90 days to give him time to find employment, were also reasonably based on the evidence that the court credited for reasons that the court explained. In sum, Elnimeiry fails to show that the circuit court erroneously exercised its discretion in imputing income based on an earning capacity of $130,000 working 20 hours per week.

## CONCLUSION

¶37     For the reasons stated, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.